## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ANN JONES,** Individually and On Behalf of All Others Similarly Situated,<br><br>**PLAINTIFFS,**<br><br>vs.<br><br>**CHARTER COMMUNICATIONS, INC.**<br><br>**DEFENDANT**. | CASE NO. _____<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

**COMES NOW**, Plaintiff Ann Jones (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated (the "Class" and "Subclass" as defined below), upon personal knowledge as to the facts pertaining to herself, upon information and belief as to all other matters and based on the investigation of counsel, brings this class action against Defendant Charter Communications, Inc. (hereinafter, referred to as "Defendant" or "Charter"), seeking damages and other relief seeking class-wide recovery of damages, restitution, and other relief against Defendant, and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action for Plaintiff's self and all others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendant, Defendant's agents, and/or third-party entities hired by Defendant in

1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ANN JONES,** Individually and On Behalf of All Others Similarly Situated,<br><br>**PLAINTIFFS,**<br><br>vs.<br><br>**CHARTER COMMUNICATIONS, INC.**<br><br>**DEFENDANT**. | **CASE NO.** _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

**COMES NOW**, Plaintiff Ann Jones (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated (the "Class" and "Subclass" as defined below), upon personal knowledge as to the facts pertaining to herself, upon information and belief as to all other matters and based on the investigation of counsel, brings this class action against Defendant Charter Communications, Inc. (hereinafter, referred to as "Defendant" or "Charter"), seeking damages and other relief seeking class-wide recovery of damages, restitution, and other relief against Defendant, and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action for Plaintiff's self and all others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendant, Defendant's agents, and/or third-party entities hired by Defendant in

1

negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's residential telephone in violation of the Telephone Consumer Protection Act, 47. U.S.C. § 227 *et seq.* ("TCPA"), and related regulations, thereby creating a nuisance and invading Plaintiff's privacy.

## PARTIES

2.      Plaintiff Ann Jones ("Plaintiff") is a citizen of the state of Missouri residing in the city of Ballwin and is a "person" as defined by 47 U.S.C. § 153(10).

3.      Charter Communications, Inc. is a Delaware corporation with its principal place of business in Connecticut and is a "person" as defined by 47 U.S.C. § 153(10). Charter Communications, Inc. is in the business of providing cable television, Internet, and telephone services to residential and business customers.   As of December 31, 2014, Charter served approximately 4.2 million residential video customers, 4.8 million residential Internet customers, and 2.4 million residential voice service customers.   Charter Communications, Inc. is a nationwide company which provides cable TV, internet and telephone services to customers, and is a "person" as defined by 47 U.S.C. § 153 (10).

4.      Defendant, Defendant's agents, and/or third-party entities hired by Defendant market, solicit, and/or sell Defendant's services by making outbound telemarketing and/or solicitation calls on its behalf.

5.      Upon information and belief, Defendant supplies said agents and third-party entities with a list of names and telephone numbers to be contacted for the purposes of marketing

and/or solicitation.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that:

    a.    the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;

    b.    this is a class action involving 100 or more class and subclass members; and

    c.    this is a class action in which at least one member of the Plaintiff class and subclass is a citizen of a State different from at least one Defendant.

7.    This Court has personal jurisdiction over Defendant because Defendant's headquarters are located in the State of Connecticut and Defendant is authorized to do business in the State of Connecticut and operate within this Judicial District.

8.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because it is the judicial district in which Defendant resides.

## FACTUAL ALLEGATIONS

9.    Beginning in or before October of 2015, Defendant, Defendant's agents, and/or third-party entities hired by Defendant contacted Plaintiff on her residential landline telephone ending in -5467, in an effort to sell or solicit its services.

10.    To market its services, Charter (through its family of companies) employs third-party entities to make outbound telemarketing calls on its behalf. Upon information and belief,

3

these companies include, but are not limited to, Empereon Marketing, SatCom Marketing, LLC, MarketLink, Inc., Invenio Marketing, and iPacesetters (collectively these telemarketers shall be referred to as "Charter's Telemarketers").

11.    Charter has contracts (formally titled "Master Outbound Telemarketing Agreements") with each of its telemarketers. The contracts describe which of the Charter's services the third party is to try and sell while engaging in telemarketing calls with consumers.

12.    The products and services Charter's Telemarketers are contracted to market on Charter's behalf include, but are not limited to, cable, internet, and/or telephone.  Charter's Telemarketers place telemarketing calls to the residential landline telephones of persons to sell these goods, products, and/or services to which the person is not already a subscriber as to the marketed service.

13.    Defendant, Defendant's agents, and/or third-party entities hired by Defendant caused the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive, or harassing.

14.    When on the phone with consumers, Charter's Telemarketers will identify themselves as being from Charter.

15.    Consumers have the option of purchasing one or more of Charter's services while on the phone with a telemarketer.  When that happens, the telemarketer will enter the consumer's

4

information into Charter's billing system, and Charter will set an appointment to make the necessary installation. Charter will then directly bill the consumer for the services provided.

16.     Charter's Telemarketers are compensated by "performance," meaning that they receive a commission based on sales to the consumers on the lists provided by Charter to the telemarketer.

17.     Charter and Charter's Telemarketers have made at least thousands of telemarketing calls across Missouri and other states attempting to sell Charter's cable, internet, and/or telephone services.

18.     Since September 2011, the Missouri Attorney General has received more than 350 complaints from Missouri consumers alone regarding Charter's telemarketing practices.

19.     Upon information and belief, the third-party entities that make telemarketing calls on Defendant's behalf are compensated monetarily by Defendant.

20.     Defendant, Defendant's agents, and/or the third-party entities Defendant hired to make calls on its behalf, placed multiple calls to Plaintiff's residential telephone landline seeking to sell or solicit its services. In fact, Defendant, Defendant's agents, and/or third-party entities hired by Defendant placed a barrage of calls to Plaintiff.

21.     As an illustrative example of when Defendant, Defendant's agents, and/or third-party entities hired by Defendant contacted or attempted to contact Plaintiff (and not one of limitation), Defendant, Defendant's agents, and/or third-party entities hired by Defendant called

Plaintiff's residential telephone line ending in -5467 from 1-920-550-4483 on the following dates and times, among others: October 31, 2015 at 11:12 a.m.; November 3, 2015 at 7:07 p.m.; November 9, 2015 at 10:41 a.m.; November 10, 2015 at 9:33 a.m.; November 11, 2015 at 9:53 a.m.; November 16, 2015 at 1:54 p.m.; November 18, 2015 at 9:21 a.m.; November 18, 2015 at 2:38p.m.; and November 19, 2015 at 10:40a.m.; and from 1-888-438-2427 on December 9, 2015 at 11:50a.m.

22.     On January 22, 2016, Plaintiff attempted to obtain a copy of her telephone records from July 15, 2015 to that date by calling customer service as indicated on Charter's website; however, a representative informed the Plaintiff that Plaintiff would have to hire an attorney and subpoena the records from Charter's legal department in order to obtain the requested telephone records.  For purposes of clarification, Plaintiff asked the agent if the agent was telling her that she would have to hire an attorney and subpoena the records in order to obtain a copy of her own personal phone records – to which the agent responded "Yes."

23.     Defendant's, Defendant's agents, and/or the Defendant's hired third-party entities' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

24.     Defendant, Defendant's agents, and/or the third-party entities hired by Defendant to place calls were not calling Plaintiff to market services that Plaintiff was already receiving from Defendant.  Marketing such services to Plaintiff was not necessary because Plaintiff was

already receiving such services.   Instead, Defendant, Defendant's agents, and/or third-party entities hired by Defendant was calling Plaintiff to market services to which Plaintiff was not already a subscriber as to the marketed service.

25.      Defendant's, Defendant's agents', and/or third-party entities' hired by Defendant calls were placed to a telephone number assigned to a residential landline telephone.

26.      Defendant, Defendant's agents, and/or third-party entities hired by Defendant never received Plaintiff's "prior express consent" to receive calls using an artificial or prerecorded voice on her residential telephone line pursuant to 47 U.S.C. § 227(b)(1)(B).

27.      Plaintiff did not give Defendant, Defendant's agents, and/or the third-party entities hired by Defendant prior express written consent for Defendant, Defendant's agents, and/or the third-party entities hired by Defendant to call Plaintiff's residential telephone for marketing or solicitation purposes.

28.      Upon information and belief, at all relevant times, Defendant, Defendant's agents, and/or the third-party entities hired by Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5).

## CLASS ALLEGATIONS

29.      **Class Definition**: Plaintiff brings this action pursuant to Fed.R.Civ.P. 23, on behalf of Plaintiff's self and a Class of similarly situated persons and entities and a Missouri

subclass of individuals, defined as follows.

30.     The Class:

All persons in the United States (1) who received a telephone call (a) from or on behalf of Charter (b) on their residential landline telephone (c) that used an artificial or prerecorded voice (d) that involved the marketing of at least one of Charter's products or services to which the person (i) was not already a subscriber as to the marketed service and (ii) did not ultimately subscribe and (2) had not previously consented to receiving such calls.

31.     The Missouri Subclass:

All persons in Missouri (1) who received a telephone call (a) from or on behalf of Charter (b) on their residential landline telephone (c) that used an artificial or prerecorded voice (d) that involved the marketing of one or more of Charter's products or services to which the person (i) was not already a subscriber as to the marketed service and (ii) did not ultimately subscribe to the marketed service and (2) had not previously consented to receiving such calls.

32.     Excluded from the Class and Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or Defendant's parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class and Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

33.     Plaintiff represents, and is a member of the Class and Subclass as defined above and is not otherwise excluded from the Class or Subclass.

34.     **Numerosity:** The Class and Subclass consists of hundreds, if not thousands, of individuals and other entities, making joinder impractical. The exact size of the respective class and subclass the identities of the individual members thereof are ascertainable through Defendant's and Defendant's agents' call records.

35.     **Typicality.**   The claims of Plaintiff are typical of the claims of the respective Class and Subclass.  The claims of the Plaintiff and the respective Class and Subclass are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the respective Class and Subclass.

36.     **Superiority.**   The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class and Subclass Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiff and members of the Class and Subclass have suffered irreparable harm as a result of Defendant's bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class and Subclass members' claims, no Class or Subclass members could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class and Subclass would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the bad faith, unlawful, unfair, and/or deceptive conduct that is the subject of this Complaint, and Defendant would be permitted to retain the proceeds of their violations of law.  Further, individual litigation has the potential to

result in inconsistent or contradictory judgments.   A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.   Absent a class action, most of the respective Class and Subclass members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.   The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.   The litigation without a class or subclass would allow litigation claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions. Lastly, the prosecution of separate actions by individual members of the class would create a risk of:

a.   Inconsistent or varying adjudications with respect to individual members of the respective class and subclass which would establish incompatible standards of conduct for the party opposing the respective class and subclass; and

b.   Adjudications with respect to individual members of the respective class and subclass which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

37.   **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiff and the Class and Subclass Members. All of the Class and

Subclass Members' claims are based upon the same facts and circumstances. Those common questions predominate over any questions that may affect individual Class and Subclass Members.  Common questions include, but are not limited to, the following:

a.  Whether, within the last four years prior to the filing of this Complaint, Defendant, Defendant's agents, and/or third-party entities hired by Defendant made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any artificial or prerecorded voice to any telephone number assigned to a residential telephone service;

b.  Whether the telephone calls were made for a commercial purpose.

c.  Whether the telephone calls included and/or introduced an advertisement of Defendant's voice and/or internet and/or video service to which Plaintiff was not already a subscriber as to the marketed service and/or constituted telemarketing of Defendant's voice and/or internet and/or video service to which Plaintiff was not already a subscriber as to the marketed service.

d.  Whether the telephone calls were not made for an emergency purpose.

e.  Whether the telephone calls were not made solely pursuant to the collection of a debt owed to or guaranteed by the United States.

f.  Whether the telephone call was not made or is exempted by rule or order by the Commission under paragraph (2)(B).

g.  Whether the telephone calls were not made by or on behalf of a tax-exempt non-profit organization.

h.  Whether the telephone calls delivered a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

i.  Whether Plaintiff and Class and Subclass Members were damaged thereby,

and the extent of damages for such violation;

j. Whether Defendant should be enjoined from engaging in such conduct in the future;

k. Whether Defendant should be enjoined from hiring agents and/or third-party entities to engage in such conduct in the future;

l. Whether Plaintiff and Class and Subclass Members are entitled to damages;

m. Whether Plaintiff and Class and Subclass Members are entitled to punitive damages;

n. Whether Plaintiff and Class and Subclass a Members are entitled to treble damages;

o. Whether Plaintiff and Class and Subclass Members are entitled to attorneys' fees; and

p. Whether Plaintiff and Class and Subclass Members are entitled to costs.

38. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the members of the respective class and subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other respective class and subclass members, and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other respective class and subclass members.

39. **Policies Generally Applicable to the Class**: Defendant, Defendant's agents,

and/or third-party entities hired by Defendant has acted or refused to act on grounds generally applicable to the class and subclass, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. §227 et seq.**
**(against Defendant on behalf of the Class and Subclass)**

40.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

41.     Defendant, Defendant's agents, and/or third-entities hired by Defendant initiated telephone calls to residential landline telephones of Plaintiff and Class Members using an artificial or prerecorded voice to deliver a message without their prior express consent.

42.     The telephone calls were made for a commercial purpose.

43.     The telephone calls included and/or introduced an advertisement of Defendant's voice and/or internet and/or video service to which Plaintiff was not already a subscriber as to the marketed service and/or constituted telemarketing of Defendant's voice and/or internet

and/or video service to which Plaintiff was not already a subscriber as to the marketed service.

44.     The telephone calls were not made for an emergency purpose.

45.     The telephone call was not made solely pursuant to the collection of a debt owed to or guaranteed by the United States.

46.     The telephone calls were not made or is exempted by rule or order by the Commission under paragraph (2)(B).

47.     The telephone calls were not made by or on behalf of a tax-exempt non-profit organization.

48.     The telephone calls did not deliver a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

49.     As a result of Defendant's, Defendant's agents, and/or third-party entities' hired by Defendant violation of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class and Subclass Members are entitled to and seek injunctive relief prohibiting such conduct in the future.

50.     As a result of Defendant's, Defendant's agents, and/or third-party entities' hired by Defendant violation of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class and Subclass Members are entitled to and seek an award of damages for actual monetary loss from such a violation or $500 in damages for each such violation, whichever is greater, pursuant to 47 U.S.C. § 227(b)(3)(B).

51.     Defendant's, Defendant's agents, and/or third-party entities' hired by Defendant violations of 47 U.S.C. § 227 *et seq.* were willful and knowing; therefore the Court may award Plaintiff and the Class members treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## SECOND CAUSE OF ACTION
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227 *et seq.*
### (against Defendant on Behalf of the Class and Subclass)

52.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53.     Defendant, Defendant's agents, and/or third-party entities hired by Defendant initiated telephone calls to residential landline telephones of Plaintiff and the Class and Subclass Members using an artificial or prerecorded voice to deliver a message—without their prior express consent.

54.     The telephone calls were made for a commercial purpose.

55.     The telephone calls included and/or introduced an advertisement of Defendant's voice and/or internet and/or video service to which Plaintiff was not already a subscriber as to the marketed service and/or constituted telemarketing of Defendant's voice and/or internet and/or video service to which Plaintiff was not already a subscriber as to the marketed service.

56.     The telephone calls were not made for an emergency purpose.

57.     The telephone call was not made solely pursuant to the collection of a debt owed to or guaranteed by the United States.

58.     The telephone call was not made or is exempted by rule or order by the Commission under paragraph (2)(B).

59.     The telephone calls were not made by or on behalf of a tax-exempt non-profit organization.

60.     The telephone calls did not deliver a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

61.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

62.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)     **Written policy**. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2)     **Training of personnel engaged in telemarketing**. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)     **Recording, disclosure of do-not-call requests**. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4)     **Identification of sellers and telemarketers**. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5)  **Affiliated persons or entities**. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6)  **Maintenance of do-not-call lists**. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

63.  Defendant, Defendant's agents, and/or third-party entities hired by Defendant made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendant, Defendant's agents, and/or third-party entities hired by Defendant, and/or Defendant, Defendant's agents, and/or third-party entities hired by Defendant do not have a current record of consent to place telemarketing calls to them.

64.  Defendant, Defendant's agents, and/or third-party entities hired by Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendant  in violation of 47 C.F.R. §

64.1200, as described above. As a result of Defendant's, Defendant's agents, and/or third-party entities' hired by Defendant conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

65.    Defendant's, Defendant's agents, and/or third-party entities' hired by Defendant violations of 47 U.S.C. § 227 *et seq*. were willful and knowing; therefore the Court may award Plaintiff and the Class members treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

66.    Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FOURTH CAUSE OF ACTION
### Declaratory Relief

67.    Plaintiff incorporates by reference all preceding paragraphs this Petition as if fully set forth herein.

68.    As a result of Defendant's, Defendant's agents, and/or third-party entities' hired by Defendant actions described herein, a justiciable controversy presents a real, substantial, presently-existing controversy admitting of specific relief, and Plaintiff and the Class have legally protectable interests at stake.

69.    Plaintiff has no adequate alternative remedy at law.

70.     This dispute is ripe for adjudication.

71.     A declaration that Defendant's, Defendant's agents', and/or third-party entities' hired by Defendant actions, as described herein, violate the TCPA is warranted.

#                           #                           #

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, requests the following relief:

a. That the Court enter an order certifying the Class and Subclass and appointing Plaintiff as the representative of the respective Class and Subclass, and appointing counsel for Plaintiff as lead counsel for the respective Class and Subclass;

b. That the Court enter judgment against Defendant for all economic, monetary, actual, statutory, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Class and Subclass treble and exemplary damages;

c. That the Court enter judgment finding that Charter has violated the provisions of the TCPA;

d. Issuing permanent injunctions pursuant to 47 U.S.C. § 227(b)(3)(A), 15 U.S.C. § 53(b), and other laws to prevent Charter from continuing to violate the TCPA and the Missouri Telemarketing Law;

e. That the Court award Plaintiff and the respective Class and Subclass pre- and post-judgment interest;

f. That the Court award Plaintiff and the respective Class and Subclass their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action; and

g. That the Court award such other and further relief as may be necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all claims to the extent authorized by law.

Respectfully Submitted,

Dated: February 24, 2016          By: /s/ ct04516

Neal L. Moskow, Esq.
Fed. Bar. No. CT 04516
Ury & Moskow, L.L.C.
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone (203) 610-6393
Facsimile: (203) 610-6399
neal@urymoskow.com

Francis J. "Casey" Flynn, Jr.
(*pro hac vice* application forthcoming)
Tiffany M. Yiatras
(*pro hac vice* application forthcoming)
*tyiatras@careydanis.com*
Carey, Danis & Lowe
8235 Forsyth Boulevard, Suite 1100
Saint Louis, Missouri 63105-1643
Telephone: (314) 725-7700
Facsimile: (314) 721-0905
francisflynn@gmail.com
tyiatras@careydanis.com

Anthony S. Bruning
(*pro hac vice* application forthcoming)
Anthony S. Bruning, Jr.
(*pro hac vice* application forthcoming)
Ryan Bruning
(*pro hac vice* application forthcoming)
The Bruning Law Firm, LLC
555 Washington Avenue, Suite 600
St. Louis, MO 63101
Phone: (314) 231-9600
Fax: (314) 231-9480
tony@bruninglegal.com
aj@bruninglegal.com
ryan@bruninglegal.com

Richard S. Cornfeld
(*pro hac vice* application forthcoming)
Law Office of Richard S. Cornfeld
1010 Market Street, Suite 1720
St. Louis, MO 63101
Phone: (314) 241-5799
Fax: (314) 241-5788
rcornfeld@cornfeldlegal.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS AND SUBCLASS**